**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ex. Rel. Jerre Frazier,<br><br>        Plaintiff/Relator,<br><br>vs.<br><br>IASIS Healthcare Corporation,<br><br>        Defendant. | No. CV 05-766-PHX-JAT<br><br>**ORDER** |

      Pending before the Court is Defendant's Motion to Dismiss the Second Amended Complaint (Doc. #68).  The Court now rules on the Motion.

## I. BACKGROUND

      Qui tam Relator, Jerre Frazier, the former Chief Compliance Officer and Vice President, Ethics and Business Practices, of Defendant IASIS Healthcare Corp., brought this False Claims Act (FCA) case on March 11, 2005.  Mr. Frazier served in the Compliance Officer and VP position at IASIS from November 1999 until April 2003, then served as a consultant for another year.  During his tenure with IASIS, Mr. Frazier monitored compliance with various healthcare laws and regulations.

      Mr. Frazier filed this action under the FCA to recover damages and civil penalties. The FCA permits individuals to bring fraud actions on behalf of the United States and to retain for themselves a portion of any recovery.  The United States may choose to join in the action, but if it does not, the individual can maintain the action on the government's behalf.

The FCA provides in pertinent part that any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; . . .
> (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains ....

31 U.S.C.A. § 3729.  Mr. Frazier alleges that IASIS violated all these sections by defrauding the government of medicare and other federal health program funds.

Pursuant to the FCA, Mr. Frazier filed his original complaint under seal and served it only on the United States Attorney for the District of Arizona and the Untied States Department of Justice.  The United States sought to extend the statutory sixty-day period of the seal to further investigate Mr. Frazier's allegations.  In September 2005, the Office of Inspector General issued subpoenas to IASIS and certain physicians.  In September 2006, the United States sought leave to interview former IASIS employees (Doc. #23).  The Magistrate Judge denied leave to interview former employees because he found that the request called for an advisory opinion (Doc. #27).

In May 2007, the United States requested a further extension of one-hundred eighty (180) days to elect whether to intervene in the case (Doc. #31).  The Magistrate Judge denied the motion (Doc. #33).  Consequently, the United States elected not to intervene in the case, but reserved the right to intervene at a later date and stated that "the government's investigation will continue." (Doc. #34).  Mr. Frazier decided to proceed with the action on his own and filed a Second Amended Complaint on July 20, 2007.

1

## II. LEGAL STANDARD

2    Complaints filed pursuant to the FCA, an anti-fraud statute, must meet the

3  requirements of Federal Rule of Civil Procedure 9(b).  IASIS moves to dismiss the First

4  Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for

5  failure to adequately plead the FCA claims.  "Because a dismissal of a complaint or a claim

6  grounded in fraud for failure to comply with Rule 9(b) has the same consequence as a

7  dismissal under Rule 12(b)(6), dismissals under the two rules are treated in the same

8  manner."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

9    Rule 9(b) requires that allegations of fraud be "'specific enough to give defendants

10 notice of the particular misconduct which is alleged to constitute the fraud charged so that

11 they can defend against the charge and not just deny that they have done anything wrong.'"

12 *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)(quoting *Neubronner v. Milken*,

13 6 F.3d 666, 672 (9th Cir. 1993)).  But furnishing defendants with notice of the fraud is not

14 Rule 9(b)'s only function.  *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994),

15 *superceded by statute on other grounds*, Private Securities Litigation Reform Act of 1995,

16 15 U.S.C. §78u-4, (stating, "We cannot accept plaintiffs' position . . . Plaintiffs argue

17 essentially that the only function of Rule 9(b) is to furnish defendants with notice.  Plaintiffs

18 thereby collapse Rule 9(b) into Rule 8(a), . . . . But Rule 9(b) clearly imposes an *additional*

19 obligation on plaintiffs: the statement of the claim must *also* aver with particularity the

20 circumstances constituting the fraud.")(emphasis in the original).  Rule 9(b) also functions

21 to deter the filing of actions as a pretext for discovery of unknown wrongs, to protect

22 defendants from "the harm that comes from being subject to fraud charges, and to prohibit

23 plaintiffs from unilaterally imposing upon the court, the parties and society enormous social

24 and economic costs absent some factual basis."  *Bly-Magee*, 236 F.3d at 1018.

25    To accomplish those goals, "Rule 9(b) requires particularized allegations of the

26 circumstances *constituting* fraud."  *Id.*  (emphasis in the original).  The "who, what, when,

27 where, and how" of the misconduct must accompany allegations of fraud.  *Vess*, 317 F.3d at

28 1106 (9th Cir. 2003)(internal quotation marks omitted).  A plaintiff cannot survive a

1   12(b)(6)/9(b) motion to dismiss by alleging only the neutral facts necessary to identify a

2   fraudulent transaction.  *In re Glenfed*, 42 F.3d at 1548 (stating, "[A] plaintiff must set forth

3   what is false or misleading about a statement, and why it is false . . . A plaintiff might do less

4   and still identify the statement complained about; indeed, the plaintiff might do less and still

5   set forth some of the circumstances of the fraud.  But the plaintiff cannot do anything less

6   and still comply with Rule 9(b)'s mandate . . . .").

7          Because Mr. Frazier was a corporate insider, he should have adequate knowledge of

8   the alleged fraud to comply with the heightened pleading requirements of Rule 9(b).  *Bly-*

9   *Magee*, 236 F.3d at 1019; *see also Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1052(9th

10  Cir. 2001)(holding that relator was not entitled to a more lenient application of Rule 9(b)

11  because relator had worked as a supervisor for defendant for twenty years and had

12  knowledge of the allegedly false tests at issue).

13      **III. FCA ALLEGATIONS**

14         Mr. Frazier argues that IASIS violated the FCA, 31 U.S.C. §§3729(a)(1), (a)(2),

15  (a)(3), and (a)(7), by allegedly submitting claims for reimbursement from federally-funded

16  health care programs for medically unnecessary procedures and by falsely certifying that it

17  had complied with the Ethics in Patient Referral Act of 1989, Omnibus Budget

18  Reconciliation Act of 1989, Pub. L. No. 101-239, 103 Stat. 2106 ("Stark I"), Omnibus

19  Budget Reconciliation Act of 1993, Pub. L. NO. 103-66, 107 Stat. 312 ("Stark II"), 42

20  U.S.C. §1395nn *et seq.* (collectively, "Stark Law") and the Medicare and Medicaid Anti-

21  Kickback Statute, 42 U.S.C. § 1320a-7b ("Anti-Kickback Statute").

22         To prevail on a false certification theory under the FCA, a plaintiff must: 1) allege

23  some falsity; 2) allege that the claim was false at the time it was made - the Defendant must

24  have knowingly made the false claim; and 3) demonstrate that the false statement was

25  material to the government's decision to pay the claim.  *Hendow v. Univ. of Phoenix*, 461

26  F.3d 1166, 1171-72 (9th Cir. 2006).   The materiality element is satisfied if, as here,

27  government funding is conditioned upon certification of compliance.

28         Violations of laws and regulations alone do not create a cause of action under the

1   FCA. *Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). It is the false certification of

2   compliance that creates liability. *Id.* Some request for payment, made with scienter and

3   containing a false statement, must exist to impose liability under the FCA. *Id.* at 1265.

4          A FCA plaintiff cannot prevail by describing in detail a private scheme that violates

5   laws and regulations. *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002).

6   The plaintiff must establish that a false claim was actually submitted to the government. *Id.*

7   "Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation." *Id.*

8   (internal quotations omitted). The FCA focuses on the submission of a claim, not on whether

9   or to what extent a "menacing underlying scheme" exists. *Id.* Because it is the submission

10  of a false claim that triggers liability under the FCA, a plaintiff must plead the submission

11  with particularity. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005).

12         **A.  Medically Unnecessary Procedures**

13         Mr. Frazier alleges that since at least 1999, IASIS has received millions of dollars

14  from Medicare and other federal health programs for medically unnecessary procedures

15  performed by physicians with whom IASIS had improper financial relationships and by

16  unspecified IASIS hospitals. (Compl. ¶130 ). The Second Amended Complaint names six

17  physicians specifically. Mr. Frazier claims that Dr. Siegel at Mesa General Hospital and St.

18  Luke's Hospital and Drs. Rao and Keise at Mid-Jefferson Hospital performed a large number

19  of medically unnecessary interventional cardiology procedures. (Compl. ¶ 10). Mr. Frazier

20  further alleges that Dr. Srivastava at Odessa Regional Hospital performed unnecessary heart

21  surgeries (Compl. ¶¶93-94, 130 ); that Dr. Pollack performed unnecessary ostomy surgery

22  "in the Florida market" (Compl. ¶¶99, 130); and that Dr. Stein from Memorial Hospital of

23  Tampa performed unnecessary diagnostic radiology procedures (Compl. ¶¶113, 130 ).

24         Mr. Frazier argues that IASIS violated the FCA by submitting payment claims to the

25  government for unnecessary medical procedures.[1] Rule 9(b) requires Mr. Frazier to plead

26

27         [1]Medicare and other federal health care programs require as a condition of coverage

28  that services rendered be reasonable and medically necessary. 42 U.S.C. §1395y(a)(1)(A).

1   the "who, what, when, where, and how" of the alleged misconduct. *Vess*, 317 F.3d at 1106.

2   Mr. Frazier has failed to meet the Rule 9(b) burden with regard to his medical necessity

3   claims.

4          In six instances, Mr. Frazier has adequately alleged the "who" of the fraud by alleging

5   the doctor who preformed the medical procedures. He also has alleged the "where" for five

6   of the doctors by naming the hospitals where the doctors practiced. While Mr. Frazier has

7   alleged generally the "what" - performing certain general types of procedures, he has not

8   alleged any specific surgeries. Nor has Mr. Frazier provided any specific dates for the

9   procedures (he claims generally that the doctors began performing the unnecessary

10  procedures in 1999). Most importantly, Mr. Frazier has not alleged the "how" of the fraud.

11  He has not stated why the procedures were medically unnecessary.

12         Mr. Frazier cannot meet his heightened pleading standard by making general

13  allegations of fraud. His bare allegations that certain doctors performed "medically

14  unnecessary procedures" without any additional detail cannot survive the motion to dismiss.

15  Mr. Frazier's statements lack the required specificity as to the "what, when, and how" of the

16  allegedly fraudulent procedures. The allegations also suffer from a lack of detail regarding

17  the submission of the claims. Mr. Frazier does not list a single specific "unnecessary

18  procedure" for which IASIS submitted a claim for funds from a government health care

19  program.

20         The Court therefore grants IASIS's motion to dismiss with regard to all claims based

21  on the "medically unnecessary procedure" theory.

22         **B.   Violations of Stark and Anti-Kickback**

23         Mr. Frazier bases his false certification theory on IASIS hospitals' submission of

24  annual cost reports following alleged violations of the Stark Law and the Anti-Kickback

25  Statute. From at least 1999 to 2004, the hospitals owned by IASIS had to submit annual

26  Form CMS-2252s, otherwise known as Hospital Cost Reports. These cost reports contained

27  the following certification:

28              I further certify that I am familiar with the laws and regulations

- 6 -

1
2

> regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

3
4
5
6

> Misrepresentation or falsification of any information contained in this cost report may be punishable by criminal, civil and administrative action, fine, and/or imprisonment under federal law.  Furthermore, if services identified in this report were provided or procured through the payment directly or indirectly of a kickback or where otherwise illegal, criminal, civil and administrative action, fines and/or imprisonment may result.

7   *See* 42 C.F.R. §413.24(f)(4)(iv).  Once Stark became effective, hospitals also certified on

8   Form 2552 that the services provided were billed in compliance with the Stark Law.

9   The Stark Law prohibits a hospital from submitting Medicare claims for payment for

10  certain services based on patient referrals from physicians who have an improper "financial

11  relationship" with the hospital.  42 U.S.C. §1395nn(a)(1).  A hospital that collects payment

12  for a healthcare service performed pursuant to a prohibited referral must timely refund all

13  collected amounts. 42 C.F.R. §411.353.  The Anti-Kickback Statute prohibits a hospital from

14  making or accepting payment to induce or reward any person for referring, recommending,

15  or arranging for the purchase of any item for which payment may be made under a federally-

16  funded health care program.  42 U.S.C. §1320a-7b(b).

17  Mr. Frazier has made allegations of varying detail regarding certain doctors'

18  prohibited financial relationships with IASIS hospitals.  Mr. Frazier claims that IASIS

19  impermissibly compensated physicians in many different ways in return for valuable patient

20  referrals.  For example, Mr. Frazier alleges that in exchange for referrals, IASIS: (1) paid

21  above fair market value for cath lab services (Compl. ¶¶84, 86-87); (2) leased spaces for

22  below their fair market value (Compl. ¶¶ 92, 95-98, 117, 123); (3) assumed a lease for

23  unnecessary space (Compl. ¶¶ 111); and (4) compensated physicians for services that the

24  physicians did not actually render or gave compensation that exceeded the value of services

25  rendered (Compl. ¶¶ 80, 100-102, 105, 117, 122).

26  While not all of Mr. Frazier's allegations regarding Stark and Anti-Kickback

27  violations meet Rule 9(b)'s required level of specificity, some do.  But merely alleging a

28  violation of the Stark Law and/or Anti-Kickback Statute does not sufficiently state a claim

1    under the FCA.   *Hopper*, 91 F.3d at 1266.  It is the false certification of compliance that
2    creates liability.  *Id*.

3         The Second Amended Complaint dedicates pages and pages to describing the
4    allegedly improper relationships between certain physicians and IASIS hospitals, but
5    provides no detail regarding the referral of Medicare-eligible patients as a result of those
6    relationships or the submission of claims to the government for payment.  Because the crux
7    of an FCA claim is the submission of a false claim, the Second Amended Complaint's lack
8    of any detail regarding the referrals and submission of the certification is fatal.

9         Mr. Frazier alleges that IASIS had improper financial relationships with certain
10   physicians.  He also alleges, in some cases, that those physicians referred patients to IASIS
11   hospitals.  In most instances, however, he does not specifically allege that the physicians
12   referred medicare-eligible patients to IASIS Hospitals.  And the Stark Law and Anti-
13   Kickback statutes do not regulate private pay patients.

14        Further, in order for the annual cost reports to have been false, the doctors with
15   prohibited relationships must have referred medicare-eligible patients to an IASIS hospital,
16   and the individual IASIS hospitals must have then sought government money for the services
17   provided to those patients.  The Second Amended Complaint addresses these crucial aspects
18   of the FCA claim with only scant details.  The Second Amended Complaint focuses on the
19   illegal relationships, then only generally alleges that the physicians referred "patients" to
20   IASIS hospitals, that IASIS improperly billed the government for services to those patients,
21   and that IASIS nonetheless certified it had complied with health care regulations in annual
22   cost reports from at least 1999 to 2004.[2]

23        Other courts have faced similarly deficient FCA complaints.  In *Peterson v. Cmty.*
24   *Gen. Hosp.*, 2003 WL 262515 (N.D. Ill. 2003), the plaintiff brought a qui tam action under
25   the FCA against three hospitals for falsely certifying they complied with the Stark Law.  The

26

27   _____

28        [2]Actually, IASIS would not have submitted anything. The individual hospitals owned
     by IASIS would have submitted the annual cost reports.

- 8 -

1    pleading deficiencies in the *Peterson* case closely mirror the problems here.  The *Peterson*

2    court noted that the relator essentially alleged that: "(1) defendants provided financial

3    remunerations and other benefits to various physicians; (2) in exchange, those physicians

4    referred Medicare patients to defendants; (3) defendants billed Medicare for the services they

5    provided to those patients; and (4) defendants falsely certified their claims complied with

6    federal law."  *Id.* at *1.

7         In describing the insufficiency of those allegations, the *Peterson* court stated:

8    Although he has provided ample detail about (1), relator has made only the sketchiest
     allegations concerning (2), (3), and (4).  Specifically, throughout his complaint relator does
9    not identify a single Medicare patient referred to defendants pursuant to any of the allegedly
     unlawful self-referral arrangements.  Nor does he identify or attach a single Medicare claim
10   submitted by defendants for services rendered pursuant to a forbidden referral, let alone one
     for which defendants certified their compliance with federal law. . . . As explained above, the
11   whole point of relator's case is that defendants submitted Medicare claims for services they
     provided to patients who allegedly had been referred to them in violation of the Stark law.
12   But which patients?  And which claims?  And which claims or other documents show
     defendants falsely certified their compliance with federal law?  These questions are
13   absolutely essential to relator's claim of fraud. . . . They must be pleaded with particularity.
     To be clear, the court does not expect relator to list every single patient, claim, or document
14   involved, but he must provide at least some representative examples.

15   *Id.* at *1-2 (citing *Clausen v. Lab. Corp. of America*, 290 F.3d 1301, 1312-13 (11th Cir.

16   2002)).

17        The Court has the same type of lingering questions in this case.  As IASIS points out,

18   the Second Amended Complaint does not answer the following questions, among others: (1)

19   Which IASIS hospitals submitted false certifications?; (2) How many cost reports and

20   certifications did each hospital submit?; (3) When specifically did an individual IASIS

21   hospital submit the alleged false report?; (4) Who at each hospital, or which officer or

22   position, provided the certifications?; (5) What line items in the cost reports were affected

23   by alleged illegal physician relationships?; (6) By how much was a reimbursement in the cost

24   report allegedly overstated?; (7) Did a particular physician in fact make any prohibited

25   Medicare referrals to a particular hospital while an alleged improper relationship existed; (8)

26   If so, when did the physician make the referral?; (9) When did the hospitals submit claims

27   for interim payment to Medicare; and (10) When, if at all, did Medicare pay on those

28

claims?[3]

The Court recognizes that Mr. Frazier has alleged a fraudulent scheme that spanned several years and that he might not know the names of all the IASIS employees involved at the various hospitals.  And the Court does not suggest that Mr. Frazier should have to detail every single referral and submission that occurred over the course of the alleged fraud.[4] Representative examples would suffice.

Nor does the Court want to enumerate a list of things that a FCA plaintiff has to allege in order to survive a motion to dismiss.  But without pleading some detail regarding actual Medicare referrals, billing and payment for services provided to the Medicare patient, and the submission of the certification of billing compliance, a complaint cannot sufficiently allege a claim under the FCA for violations of the Stark Law and the Anti-Kickback Statute. *See Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232-35 (1st Cir. 2004); *Clausen*, 290 F.3d at 1311-14.  To hold otherwise would eviscerate the particularity requirements of Rule 9(b).

The Court therefore must dismiss the allegations regarding false certification of compliance with the Stark Law and the Anti-Kickback Statute.  The Court likewise dismisses Mr. Frazier's conspiracy allegations.  The Second Amended Complaint perhaps sufficiently states a conspiracy to violate the Stark Law and the Anti-Kickback Statute, but does not allege with any particularity a conspiracy to submit false claims to the government.

Because the foregoing are the only issues remaining after the motion to dismiss briefing, the Court grants IASIS's Motion to Dismiss.

---

[3]The cost reports at issue are false only to the extent that they are used to retain money already received from Medicare.  Thus, if money was not received before submission of a report, the certification could not have been false.  (Reply, Doc. #106, p. 7 n.15).

[4]The Court recognizes potential privacy concerns regarding alleging patient names. But a plaintiff could allege, for example, the patient's gender, age, the date of the referral, who referred the patient, the date she or he received medical services, where he or she received the services, the type of medical services received, and from whom.

1

**IV. LEAVE TO AMEND**

2      Leave to amend, "shall be freely given when justice so requires."  Fed. R. Civ. Pro.

3  15(a).  Whether to grant leave to amend depends on the following factors: (1) undue delay,

4  (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether

5  plaintiff has previously amended his complaint.  *Western Shoshone Nat. Council v. Molini*,

6  951 F.2d 200, 204 (9th Cir. 1991).

7      Relator first filed this action over three years ago on March 11, 2005.  Relator filed

8  a First Amended Complaint about a year later on March 27, 2006.  (Doc. #19).  Relator filed

9  a third complaint, the Second Amended Complaint, on July 20, 2007, after the government

10  had engaged in nearly two years of investigation.  (Doc. #43).  Relator now seeks leave to

11  file a fourth complaint.

12      Given his former position with IASIS and given the government's extensive

13  investigation, Mr. Frazier should have had ample information when he filed the Second

14  Amended Complaint.[5]  Yet, the Court has found that complaint insufficient.  And without

15  further participation from the government or discovery, Mr. Frazier likely will not have

16  access to additional information.  Further, Mr. Frazier's opposition to the motion to dismiss

17  indicates that he does not have the type of information regarding patient referrals and claim

18  submissions that the Court has stated he must allege to survive a motion to dismiss.  In that

19  case, any leave to amend would be futile.

20      Because of the advanced age of the case, Relator's two prior amendments, and the

21  seeming futility of allowing Mr. Frazier to file a Third Amended Complaint, the Court will

22  deny leave to amend.  The Court therefore grants the motion to dismiss with prejudice.

23      Accordingly,

24      IT IS ORDERED GRANTING Defendant IASIS's Motion to Dismiss (Doc. #68) with

25  prejudice.

26

27      [5]Mr. Frazier made no effort to file an amended complaint in the time between filing the Second Amended Complaint and IASIS's filing of the motion to dismiss in November

28  of 2007.

1    IT IS FURTHER ORDERED DENYING all remaining pending motions in this case

2  as moot.

3    IT IS FURTHER ORDERED that the Clerk of the Court shall enter formal judgment

4  for Defendant.

5    DATED this 21st day of April, 2008.

6

7

8    _____

9    James A. Teilborg
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28