**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, ex. Rel. Jerre Frazier, <br><br> Plaintiff, <br><br> v. <br><br> IASIS Healthcare Corporation, <br><br> Defendant. | 2:05-cv-766-RCJ <br><br> **ORDER** |

Currently before the Court are Defendant IASIS Healthcare Corporation's ("IASIS" or "Defendant") Motion for Return of Documents Preliminary to Further Briefing (#134); Plaintiff Jerre Frazier's ("Frazier" or "Plaintiff") Motion to Transfer Venue (# 137); Plaintiff's Motion to Seal Portions of Declaration of Colette G. Matzzie (#138); Plaintiff's Motion to File a Supplemental Declaration of Colette G. Matzzie in Support of Motion to Transfer Venue (#140); Government's Motion for Leave to File Statement of Interest (#146); Motion for Leave to File Surreply in Response to IASIS's Motion for Return of Documents Preliminary to Further Briefing (#157); and Defendant's Motion to Dismiss Frazier's Third Amended Complaint (#177).

The Court heard oral argument on May 4, 2011.

**BACKGROUND**

On April 21, 2008, Judge Teilborg granted Defendant's Motion to Dismiss the Second Amended Complaint with prejudice and denied all pending motions as moot. (Order (#113) at 11-12). Frazier was IASIS's former Chief Compliance Officer and Vice President of Ethics and Business Practices from November 1999 through April 2003. (*Id.* at 1). During his tenure

with IASIS, Frazier monitored compliance with various healthcare laws and regulations. (*Id.*). On March 11, 2005, Frazier filed this action under the False Claims Act ("FCA") to recover damages and civil penalties. (*Id.*). Frazier filed his original complaint under seal and served it only on the U.S. Attorney for the District of Arizona and the U.S. Department of Justice. (*Id.* at 2). In May 2007, the United States elected not to intervene in the case but reserved the right to intervene at a later date while it continued to investigate the matter. (*Id.*). On July 20, 2007, Frazier filed his Second Amended Complaint. (*Id.*). In that complaint, he alleged two types of violations. (*See* Ninth Circuit Op. (#131-1) at 2). First, he asserted that IASIS submitted claims for reimbursement from federally funded health care programs for medically unnecessary procedures. (*Id.*). Second, he alleged that, to obtain valuable Medicare referrals, IASIS and/or the hospitals it owned entered into prohibited financial relationships with and/or provided prohibited kickbacks to doctors in violation of the Stark Act and the anti-kickback provision of the Health Insurance Portability and Accountability Act of 1996 ("Anti-Kickback Provision"). (*Id.*). Specifically, he alleged that IASIS hospitals submitted claims for referrals generated by doctors in prohibited financial relationships and, thus, falsely certified its compliance with Medicare requirements when it filed its annual cost reports. (*Id.*).

In the dismissal order, Judge Teilborg found that complaints filed pursuant to the FCA, an anti-fraud statute, had to meet the requirements of Federal Rule of Civil Procedure 9(b). (*Id.* at 3). Judge Teilborg found that Frazier failed to meet that burden in his medical necessity claims because Frazier failed to specify the what, when, and how of the allegedly fraudulent procedures and dismissed all claims based on the medically unnecessary procedure theory. (*Id.* at 6). With respect to alleged violations of the Stark and Anti-Kickback laws, Judge Teilborg found that those claims failed to meet the requirements of Rule 9(b) because Frazier did not plead any details about actual Medicare referrals, billing and payment for services provided to the Medicare patient, and the submission of the certification of billing compliance. (*Id.* at 8, 10). Judge Teilborg dismissed allegations regarding false certification of compliance with the Stark Law and the Anti-Kickback Provision and conspiracy allegations based on violations of those laws. (*Id.* at 10). Judge Teilborg denied leave to amend because of the

advanced age of the case, Frazier's two prior amended complaints, and the seeming futility of permitting him to file a Third Amended Complaint. (*Id.* at 11).

On appeal, the Ninth Circuit found that Judge Teilborg correctly determined that Frazier failed to comply with Rule 9(b) by failing to plead his claims with sufficient particularity. (Ninth Circuit Op. (#131-1) at 3). The Court held that Frazier was "not required to plead representative examples of false claims submitted to the Government to support every allegation, but he must plead with sufficient particularity to lead to a strong inference that false claims were actually submitted." (*Id.*). The Court held that "Frazier's allegations regarding medically unnecessary procedures were conclusory at best" and that, at a minimum, Frazier "must provide 'reliable indicia' that IASIS Healthcare submitted claims for medically unnecessary procedures." (*Id.*). With respect to the Stark Act and Anti-Kickback Provision, the Court held that

> Frazier need not provide representative examples to plead express false certification, so long as he sufficiently alleges an illegal kickback scheme violating [those laws] *and* provides a sufficient basis to infer that IASIS Healthcare or its hospitals expressly certified compliance with those provisions as part of the process of submitting Medicare and Medicaid claims for patients referred by doctors involved in those schemes.

(*Id.* at 4).

The Court held that, despite the failure of pleading, the district court erred in dismissing Frazier's Second Amended Complaint with prejudice. (*Id.* at 5). The Court held that the district court did not give sufficient weight to the fact that the first two complaints were filed under seal and that this current motion to dismiss was the first time Frazier's claims were subject to a Rule 9(b) sufficiency analysis. (*Id.*). The Court held that Frazier should be permitted to amend his complaint. (*Id.*).

The Court also held that, pursuant to IASIS's cross-appeal, the district court erred in denying as moot IASIS's motion for surrender. (*Id.*). The Court held that the "question of sanctions is not a judgment on the merits," but rather a determination of a collateral issue that may be made after the termination of the principal suit. (*Id.*). The Court stated that sanctions, including the dismissal of a complaint, may be granted under the court's inherent power. (*Id.*).

3

The Court held that

> Frazier is also incorrect in asserting that the motion is moot because "any arguably privileged documents" were returned without review or utilization in this case. That characterization begs the question as to whether there was abuse of the judicial process that tainted the proceedings before the documents were returned.

(*Id.* at 6). The Court reversed the district court's order denying the motion for surrender on mootness and held that "the district court should consider, after *in camera* review, whether sanctions are appropriate." (*Id.*).

On October 5, 2010, Judge Teilborg, pursuant to the Ninth Circuit remand, issued an order that Plaintiff file his Third Amended Complaint with 20 days of the order and ordered that Defendant file/re-file any motion for sanctions/motion for surrender of documents within 40 days of the order. (Order (#132) at 1).

The pending motions stem from this order.

## DISCUSSION

**I.  Defendant's Motion for Return of Documents Preliminary to Further Briefing (#134)**

In this motion, Defendant IASIS states that Frazier took numerous documents from IASIS in connection with his termination of employment. (Mot. for Return of Docs. (#134) at 2). Defendant classifies the documents, which were the basis for its previously filed motion for sanctions, in three categories. (*Id.*). The first category consisted of over 1,300 pages that Frazier and his attorneys, based on their unilateral review, admitted were at least arguably privileged and finally returned to IASIS in the summer of 2007. (*Id.*). The second category consisted of three Physician Contract Reviews ("PCRs") that Frazier's counsel returned to IASIS in the fall of 2007 after Defendant's specific demand for those documents. (*Id.*). The third category consisted of an unknown number of additional documents that Frazier took, that Frazier's counsel have reviewed and unilaterally determined not to be legitimately privileged and have refused to return to IASIS. (*Id.*).

The Court grants Defendants' Motion for Return of Documents (#134) and orders Frazier to return all withheld documents to IASIS within 20 days of this order. Additionally, the

4

Court denies Plaintiff's Motion for Leave to File Surreply in Response to IASIS's Motion for Return of Documents Preliminary to Further Briefing (#157).

## II.     Plaintiff's Motion to Transfer Venue (#137) and Related Motions (#138, 140, 146)

Plaintiff seeks to transfer this case to the Eastern District of Texas. (Mot. to Transfer (#137) at 1). Plaintiff argues that he is a resident of Texas and that, if this motion is granted, he intends to focus the allegations of his amended complaint between the improper financial relationship in Texas and between IASIS's Texas hospitals and physicians there. (*Id.* at 2). He asserts that a significant change in circumstances occurred since the filing of the Second Amended Complaint that results in a change of venue, namely that IASIS sold its Mesa General Hospital in Arizona in 2008. (*Id.*). He contends that many prospective witnesses are in Texas and that Texas is geographically closer to IASIS's headquarters in Tennessee. (*Id.* at 3). He asserts that he could have brought this case in the Eastern District of Texas because his complaint named IASIS hospitals in that district and made allegations against doctors and procedures in those hospitals. (*Id.* at 6). He argues that because the District of Arizona is more than 100 miles away from Texas, he would lose subpoena power over non-party witnesses. (*Id.* at 13). He argues that most of the witnesses are in Texas. (*Id.*). He asserts that Texas has a public policy of regulating healthcare providers and preventing fraud in connection with those services. (*Id.* at 15). He asserts that, in the interest of justice, the Eastern District of Texas is less congested than the District of Arizona. (*Id.* at 16). His attorney's, Colette G. Matzzie, declaration in support of the transfer states that IASIS currently owns four hospitals in Arizona and four in Texas. (Matzzie Decl. (#137-1) at 2).

In response, Defendant argues that Plaintiff's motion is an attempt at forum shopping for a court that is more lenient in assessing the sufficiency of his yet-to-be-filed Third Amended Complaint. (Opp. to Mot. to Transfer (#144) at 4). It asserts that it did not sell Mesa General, but instead declined to renew the lease in 2008 in order to open up a new facility in East Mesa. (*Id.* at 7). It asserts that it publicly announced it was closing Mesa General in March 2008, a month before the district court entered its written order and judgment dismissing the complaint and six weeks before Plaintiff filed his notice of appeal. (*Id.* at 8). It argues that this

motion is unripe because Plaintiff bases his motion to transfer venue on a hypothetical complaint. (*Id.* at 10).

Plaintiff replies that he is not forum shopping. (Reply to Mot. to Transfer (# 148) at 2-6).

Pursuant to 28 U.S.C. § 1404, a district court may transfer any civil action to any other district or division where a case may have been brought for the convenience of the parties and witnesses, in the interest of justice. 28 U.S.C. § 1404(a). Under this statute, "the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotations omitted). In determining whether a transfer is appropriate in a particular case, the court may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* at 498-99.

The Court denies the Motion to Transfer (#137) because the Court finds that Plaintiff is attempting to engage in forum shopping. Frazier initiated this lawsuit in the District of Arizona in 2005 and appealed this Court's ruling to the Ninth Circuit in 2008. Frazier now attempts to transfer this case to Texas only after the Ninth Circuit concluded that he had failed to plead with the requisite Rule 9(b) specificity.

Moreover, after considering the factors above, the Court finds that Texas is no more convenient than Arizona because IASIS's corporate offices and witnesses are in Tennessee; Frazier makes allegations against doctors and medical centers in Arizona, Texas, Florida, and Utah; Frazier initially chose to litigate in Arizona; and courts in both states are equally able to apply federal law. Accordingly, the Court denies the Motion to Transfer (#137).

Because the Court denies the Motion to Transfer (#137), the Court also denies the following motions as moot: Plaintiff's Motion to Seal Portions of Declaration of Colette G.

Matzzie (#138) in support of the motion to transfer; Plaintiff's Motion to File a Supplemental Declaration of Colette G. Matzzie in Support of Motion to Transfer Venue (#140); and the Government's Motion for Leave to File Statement of Interest (#146) with respect to the motion to transfer.

**III.  Defendants' Motion to Dismiss Frazier's Third Amended Complaint (#177)**

In his Third Amended Complaint ("TAC"), Frazier alleges violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A)-(C), (G), against IASIS and newly-added defendants, former Chief Executive Officer David White and former Chief Operating Officer Sandra McRee. (TAC (#151) ¶¶ 1-2). Frazier alleges two types of violations: (1) Defendants submitted claims for reimbursement from federally-funded health care programs for medically unnecessary procedures, and (2) IASIS's hospitals entered into prohibited financial relationships with and/or provided kickbacks to doctors in order to obtain valuable Medicare referrals in violation of the Stark Act, 42 U.S.C. § 1395nn, and the Anti-Kickback Provision, 42 U.S.C. § 1320a-7b(b)(2). (*See generally* TAC). Defendants move to dismiss the complaint in its entirety with prejudice because Frazier has failed to comply with Rule 9(b) and has failed to state a claim under Rule 12(b)(6). (Mot. to Dismiss (#177) at 2).

**A.  Legal Standard**

A complaint filed pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729, must meet the requirements of Rule 9(b). *See Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity of the circumstances must include "the who, what, when, where, and how of the misconduct charged." *Ebeid*, 616 F.3d at 998 (internal quotations omitted). The plaintiff must also set forth what is "false or misleading about a statement, and why it is false." *Id.*

A relator in an FCA action does not have to identify representative examples of false claims to support every allegation. *Id.* The use of representative examples is "simply one means of meeting the pleading obligation." *Id.* Under Rule 9(b), "it is sufficient to allege

7

'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id.* at 998-99.

"Because a dismissal of a complaint or claim grounded in fraud for failure to comply with Rule 9(b) has the same consequence as a dismissal under Rule 12(b)(6), dismissals under the two rules are treated in the same manner." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

### B. FCA Allegations[1]

Frazier argues that Defendants violated the FCA, 31 U.S.C. § 3729(a)(1)(A)-(C), (G),[2] by allegedly submitting claims for reimbursement from federally-funded health care programs for medically unnecessary procedures[3] and by falsely certifying that they had complied with the Stark Act and Anti-Kickback Provision.[4] (TAC (#151) ¶¶ 408-447). To prevail on a false

---

[1] Due to the length of Frazier's complaint, this order will not summarize the 79-page complaint. However, the order will direct the parties to specific paragraphs in the complaint for analysis purposes.

[2] Title 31 U.S.C. § 3729(a)(1) provides that any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, . . . , plus 3 times the amount of damages which the Government sustains because of the act of that person.

[3] Medicare and other federal health care programs require as a condition of coverage that services rendered be reasonable and medically necessary. 42 U.S.C. § 1395y(a)(1)(A).

[4] The Stark Act prohibits a hospital from submitting Medicare claims for payment for certain services based on patient referrals from physicians who have an improper "financial relationship" with the hospital. 42 U.S.C. § 1395nn(a)(1).

8

certification theory under the FCA, a plaintiff must: (1) allege some falsity; (2) allege that the claim was false at the time it was made, i.e. the defendant must have knowingly made the false claim; and (3) demonstrate that the false statement was material to the government's decision to pay the claim. *Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171-72 (9th Cir. 2006). The materiality element is satisfied if the government funding is conditioned upon certifications of compliance. *Id.* at 1172.

The Ninth Circuit held that "Frazier need not provide representative examples to plead express false certification, so long as he sufficiently alleges an illegal kickback scheme violating the Stark Act or the Anti-Kickback Provision *and* provides a sufficient basis to infer that IASIS Healthcare or its hospitals expressly certified compliance with those provisions as part of the process of submitting Medicare and Medicaid claims for patients referred by doctors involved in those schemes." (Ninth Circuit Op. (#131-1) at 4). With respect to medically unnecessary procedures, the Ninth Circuit held that it was not mandatory that Frazier provide representative examples, but he "must provide 'reliable indicia' that IASIS Healthcare submitted claims for medically unnecessary procedures." (*Id.* at 3).

In the TAC, Frazier alleges eight doctor/hospital relationships that either violated the Stark Act/Anti-Kickback Provision or submitted claims for medically unnecessary procedures or both. This order discusses each relationship and whether the allegations satisfy Rule 9(b).

First, Frazier alleges violations of the Stark Act and/or Anti-Kickback Provision with Dr. Richard Heuser and St. Luke's Medical Center in Arizona. (TAC (#151) ¶¶ 135-156). Even if this Court assumes that Frazier sufficiently alleges an improper financial relationship with the hospital or a referral scheme, (*see id.* ¶¶ 135-148), Frazier conclusively states that Dr. Heuser referred Medicare patients to St. Luke's and that St. Luke's submitted claims for Medicare patients referred by Dr. Heuser. (*See id.* ¶¶ 149-152, 154). He has plead no facts regarding actual Medicare referrals or the billing and payment services provided to any Medicare patient.

---

The Anti-Kickback Provision prohibits a hospital from making or accepting payment to induce or reward any person for referring, recommending, or arranging for the purchase of any item for which payment may be made under a federally-funded health care program. 42 U.S.C. § 1320a-7b(b).

9

Frazier provides no basis to infer that St. Luke's expressly certified compliance with the Stark Act/Anti-Kickback Provision as part of submitting Medicare claims for patients referred by Dr. Heuser. Accordingly, this relationship fails to plead fraud in accordance to Rule 9(b).

Second, Frazier alleges that IASIS submitted claims for both unnecessary medical procedures and in violation of the Stark Act/Anti-Kickback Provision for Dr. Robert Siegel and his Advanced Cardiac Specialists ("ACS") group at Mesa General Hospital and St. Luke's Medical Center in Arizona. (*Id.* ¶ 160). Even if this Court assumes that Frazier sufficiently alleges an improper financial relationship with the hospital or a referral scheme, (*see id.* ¶¶ 161-169, 181-183), Frazier has not provided any basis to infer that Mesa General or St. Luke's expressly certified compliance with the Stark Act/Anti-Kickback Provision as part of submitting Medicare claims for patients referred by Dr. Siegel. (*See id.* ¶¶ 188, 256-261, 263). Frazier only conclusively states that IASIS submitted Medicare/Medicaid claims in violation of the Stark Act/Anti-Kickback Provision but fails to provide any details to support these allegations. (*See id.* ¶¶ 221-22, 225, 228, 256-261).

With respect to unnecessary medical procedures, Frazier attempts to provide reliable indicia that unnecessary medical procedures were performed by Dr. Siegel or other ACS physicians at IASIS's Arizona hospitals through representative examples identified as Patients A through G. (*See id.* ¶¶ 209-252). Three of Frazier's examples (Patients A, D, and G) do not provide a reliable indicia that IASIS submitted claims for medically unnecessary procedures to Medicare or other federal health care programs because Frazier identified those patients as having private health insurance or failed to identify any insurance at all. (*See id.* ¶¶ 214, 233-237, 250). Therefore, the allegations involving those patients are legally irrelevant. In the four remaining examples of patients who did have Medicare, Frazier conclusively states that the procedures were unnecessary. To illustrate, Frazier alleges that Patient B received procedures in excess of medical necessity but only states that Patient B "died after the bypass after not being given proper post operative care." (*See id.* ¶¶ 218-219, 223). Frazier does not plead facts showing why the procedures performed on Patient B were unnecessary. Frazier conclusively asserts that Patient C received procedures in excess of medical necessity

because Patient C did not understand why they were putting stents in him. (*See id.* ¶¶ 226-227, 230). Again, Frazier does not plead facts showing why the procedures were unnecessary. In Patient E, Frazier does not allege that any procedures actually took place on the patient but conclusively states that Patient E received procedures in excess of medical necessity. (*See id.* ¶¶ 238-243). In Patient F, Frazier concludes that the patient's death was attributable to an unnecessary insertion of a stent. (*See id.* ¶¶ 245-247). However, Frazier does not plead facts to support a reasonable inference that the physician knew the procedure was medically unnecessary at the time it was performed. Therefore, none of these examples provide any reliable indicia that IASIS physicians were performing medically unnecessary procedures for Medicare/Medicaid patients.

Moreover, Frazier provides only conclusive statements that IASIS submitted claims to Medicare for the treatments of Patients B, C, E, and F. (*See id.* ¶¶ 224, 231, 242, 246). For example, Frazier repeats for each patient that, "IASIS submitted claims to Medicare for the treatment of Patient __." Thus, even assuming that medically unnecessary procedures were performed on the identified patients, Frazier fails to plead any facts providing reliable indicia that IASIS thereafter submitted claims seeking federal reimbursement for such procedures.

Additionally, Frazier's attempt to use statistics to plead unnecessary medical procedures also fails to provide any reliable indicia that IASIS physicians were performing medically unnecessary procedures on federally-insured patients. Instead, Frazier generally pleads that:

> During the time period that IASIS operated Mesa General–and submitted claims to health insurers including federal health programs like Medicare, Medicaid and Tricare–the volume of open heart bypass surgeries at Mesa reached approximately 400 heart surgeries a year, a number which far exceeds what one would expect from a small suburban/rural osteopathic hospital.
> . . . .
> The rate of implantation of Intra-Aortic Balloon Pumps . . . at Mesa General between 2004 and 2007 is staggering. More balloon pumps were implanted by Siegel and ACS at Mesa General than any other hospital in Arizona for 2004, 2005, 2006, and 2007.

(*See id.* ¶¶ 188, 196). These general allegations fail to support a reasonable inference that IASIS had submitted claims for federal reimbursement for any medically unnecessary

11

procedures performed on any federally-insured patient.  Accordingly, this relationship fails to plead fraud in accordance to Rule 9(b).

Third, Frazier alleges that IASIS submitted claims for both unnecessary medical procedures and in violation of the Stark Act/Anti-Kickback Provision for Dr. Srinavasava Rao and Dr. Radoslaw Keisz at three IASIS hospitals in Texas.  (*Id.* ¶¶ 267-268, 310-311).  With respect to Dr. Rao, even if the Court assumes there was an improper financial relationship with the hospital or a referral scheme or that Dr. Rao performed unnecessary medical procedures, Frazier only conclusively alleges that IASIS submitted those claims to Medicare.  (*See id.* ¶¶ 303-308).  Moreover, Frazier's Patient H example does not provide any reliable indicia that IASIS submitted claims to Medicare because Frazier fails to allege the type of insurance associated with that patient.  (*See id.* ¶ 291).  With respect to Dr. Keisz, Frazier only conclusively alleges that IASIS submitted claims for unnecessary medical procedures.  (*See id.* ¶¶ 303-306).  To illustrate, the complaint states, "[w]hile Drs. Rao and Keisz had the financial arrangements with IASIS Texas hospitals . . ., Drs. Rao and Keisz referred patients to IASIS, including patients covered by Medicare and other federal programs." (*See id.* ¶ 303).  Accordingly, these relationships fail to plead fraud in accordance to Rule 9(b).

Fourth, Frazier alleges that IASIS violated the Stark Act/Anti-Kickback Provision with Dr. Sudhir Srivastava and Odessa Regional Hospital in Texas.  (*Id.* ¶¶ 314, 327).  Even if the Court assumes that there was an improper financial relationship with the hospital or a referral scheme, Frazier only conclusively alleges that IASIS expressly certified compliance as part of submitting Medicare claims for patients referred by Dr. Srivastava.  (*See id.* ¶¶ 324-327).  To illustrate, the complaint states, "[w]hile Dr. Srivastava had a financial arrangement with Odessa Regional Hospital . . ., Dr. Srivastava referred patients to IASIS, including patients covered by Medicare and other federal programs." (*See id.* ¶ 324).  The complaint also generally states that "IASIS submitted claims to federal health programs for procedures and admissions of patients referred by Dr. Srivastava, including patients insured under Medicare . . . ." (*See id.* ¶ 325).  Accordingly, this relationship fails to plead fraud in accordance to Rule 9(b).

Fifth, Frazier alleges that IASIS violated the Stark Act/Anti-Kickback Provision with Drs.

Kohring, Letellier, and Herro at Mesa General Hospital. (*Id.* ¶¶ 335-338, 344). Frazier conclusively states that those doctors referred Medicare patients to Mesa General and conclusively states that IASIS certified compliance as part of the process of submitting Medicare claims for patients referred by those doctors. (*Id.* ¶¶ 340, 342, 344). In his complaint, Frazier makes the same conclusory statement that "IASIS submitted claims to federal health programs for procedures and admissions of patients referred by these physicians, including patients insured under Medicare." (*See id.*). Accordingly, these relationships fail to plead fraud in accordance to Rule 9(b).

Sixth, Frazier alleges that IASIS violated the Stark Act/Anti-Kickback Provision with Dr. James Pollack and Palms of Pasadena Hospital in Florida. (*Id.* ¶¶ 349, 364). Even if the Court assumes that there was an improper financial relationship with the hospital, Frazier conclusively asserts that Dr. Pollack referred Medicare patients to the hospital and conclusively asserts that IASIS certified compliance as part of the process of submitting Medicare claims for patients referred by Dr. Pollack. (*Id.* ¶¶ 359-364). To illustrate, the complaint only states that "[w]hile Dr. Pollack had the financial arrangements with IASIS and Palms of Pasadena . . . IASIS submitted claims to federal health programs for procedures and admissions of patients referred by Dr. Pollack, including patients insured under Medicare . . . [and] submitted annual cost reports to the Medicare program." (*Id.* ¶¶ 360-61). Frazier fails to plead any facts to support those allegations. Accordingly, this relationship fails to plead fraud in accordance to Rule 9(b).

Seventh, Frazier alleges that IASIS violated the Stark Act/Anti-Kickback Provision with Dr. John Barrett and Palms of Pasadena Hospital. (*Id.* ¶¶ 369, 381). Even if the Court assumes that there was an improper financial relationship with the hospital or a referral scheme, Frazier conclusively states that IASIS submitted claims to federal health programs for procedures and admissions of Medicare patients by Dr. Barrett and conclusively states that IASIS certified compliance as part of the process of submitting Medicare claims. (*Id.* ¶¶ 377, 378-381). To illustrate, the complaint only states that "[w]hile Dr. Barrett had the financial arrangements with IASIS and Palms of Pasadena . . . IASIS submitted claims to federal health

programs for procedures and admissions of patients referred by Dr. Barrett, including patients insured under Medicare . . . [and] submitted annual cost reports to the Medicare program." (*Id.* ¶¶ 377-78). Frazier fails to plead any facts to support those allegations. Accordingly, this relationship fails to plead fraud in accordance to Rule 9(b).

Finally, Frazier alleges that IASIS violated the Stark Act/Anti-Kickback Provision with the Granger Clinic Physicians Group and Pioneer Valley Hospital in Utah. (*Id.* ¶¶ 386, 391). Frazier conclusively states that the Granger Clinic referred Medicare patients to the hospital for leased space and that IASIS submitted Medicare claims and certified that all services were in compliance with the acts. (*Id.* ¶¶ 389, 391). Frazier fails to plead any facts to support those allegations. Accordingly, this relationship fails to plead fraud in accordance to Rule 9(b).

Because Frazier has failed to provide any reliable indicia that IASIS submitted claims for medically unnecessary procedures and has failed to provide a sufficient basis to infer that IASIS or its hospitals certified compliance with those provisions as part of the process of submitting Medicare or Medicaid claims for patients referred by doctors involved in those alleged schemes, this Court grants Defendant's Motion to Dismiss the Third Amended Complaint (#177) for failure to plead in accordance with Rule 9(b).

**C.     New Defendants**

Defendants argue that Frazier's new claims against White and McRee are time-barred for any actions prior to November 22, 2004, because there is a six-year statute of limitations. (Mot. to Dismiss (#177) at 39). They argue that, for any actions alleged post-November 22, 2004, Frazier needs to point those claims out specifically. (*Id.*). They argue that Frazier's claims against White and McRee cannot relate back because White and McRee had no reason to assume that Frazier's decision not to include them in three prior complaints was a mistake concerning identity. (*Id.* at 39-40). They also argue that the addition of White and McRee is improper because the Ninth Circuit remanded the case with the limited purpose of permitting Plaintiff a chance to plead additional facts to cure the Rule 9(b) deficiency. (*Id.* at 40).

In response, Frazier argues that the Court should grant him leave to add White and

14

McRee under Fed. R. Civ. P 15(c)(1)(C) because White and McRee "have no doubt been aware of the alleged violations against IASIS and knew or should have known that they could be subject to personal liability." (Opp. to Mot. to Dismiss (#200) at 40 n.11).

Rule 15(c)(1)(C) provides that an amendment to a pleading relates back to the date of the original pleading when the amendment changes the party or the naming of the party against whom a claim is asserted and (a) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out, or attempted to be set out, in the original pleading; (b) the new party received notice of the action 120 days after the original complaint was filed, i.e. the Rule 4(m) period; and (c) the party brought in by the amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

In *Krupski v. Costa Crociere S.p.A.*, __ U.S. __, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010), the Supreme Court held that Rule 15(c)(1)(C)(ii) "asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id.* at __, 130 S.Ct. at 2493. "The only question under Rule 15(c)(1)(C)(ii) . . . is whether party A knew or should have known that, absent some mistake, the action would have been brought against him." *Id.* at __, 130 S.Ct. at 2494. The Court held that the decision whether to grant relation back is not subject to the district court's equitable discretion. *Id.* at __, 130 S.Ct. at 2496. A court considers "what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Id.* "To the extent the plaintiff's postfiling conduct informs the prospective defendant's understanding of whether the plaintiff initially made a 'mistake concerning the proper party's identity,' a court may consider the conduct." *Id.* at __, 130 S.Ct. at 2496-97.

In this case, Frazier alleges the same claims against White and McRee as he does against IASIS. (TAC (#151) ¶¶ 408-447); Fed. R. Civ. P. 15(c)(1)(B), (C). The Court finds that neither White nor McRee knew or should have known that the second amended complaint could have been a lawsuit filed against them because the allegations in that complaint failed

to identify the correct physicians and failed to identify transactions in which White and McRee were directly involved. Accordingly, the Court denies the motion to relate back.

### D. Leave to Amend

Defendants seek a dismissal with prejudice because Frazier has failed to adequately plead violations of the FCA even after the Ninth Circuit gave him leave to amend. (Mot. to Dismiss (#177) at 41-42). Frazier responds that he should be given leave to further amend because further amendment would not be futile. (Opp. to Mot. to Dismiss (#200) at 39).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

The Court dismisses the Third Amended Complaint without leave to amend because any further amendment would be futile. Here, both Judge Teilborg and the Ninth Circuit explicitly explained to Frazier what information he needed to plead in order to satisfy the requirements of Rule 9(b). (*See* Order (# 113); Ninth Circuit Op. (#131-1)). However, even with those explicit instructions on how to satisfy Rule 9(b), Frazier has still failed to provide any reliable indicia that Defendant submitted claims for medically unnecessary procedures or that Defendant expressly certified compliance with the Stark Act/Anti-Kickback Provision as part of the process of submitting Medicare and Medicaid claims for patients referred by doctors involved in those alleged schemes. Accordingly, the Court grants the motion to dismiss the Third Amended Complaint with prejudice.

Although this Court dismisses the Third Amended Complaint with prejudice, it specifically reserves jurisdiction over the collateral issue of sanctions. *See Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003) (holding that

the question of sanctions is "a determination of a collateral issue and a determination of a collateral issue may be made after the principal suit has been terminated for lack of jurisdiction").

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Motion for Return of Documents Preliminary to Further Briefing (#134) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Leave to File Surreply in Response to IASIS's Motion for Return of Documents Preliminary to Further Briefing (#157) is DENIED.

IT IS FURTHER ORDERED that the Motion to Transfer Venue (#137) is DENIED.

IT IS FURTHER ORDERED that the Motion to Seal Portions of Declaration of Colette G. Matzzie (#138) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion to File a Supplemental Declaration of Colette G. Matzzie in Support of Motion to Transfer Venue (#140) is DENIED as moot.

IT IS FURTHER ORDERED that the Government's Motion for Leave to File a Statement of Interest (#146) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion to Dismiss Frazier's Third Amended Complaint is GRANTED (#177) with prejudice.

Dated: This 1st day of June, 2011.

_____
United States District Judge